EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| Fulano de Tal<br><br>Peticionario<br><br>v.<br><br>Demandada A, Demandada B<br><br>Recurridas | Certiorari<br><br>2022 TSPR 108<br><br>210 DPR ____ |

Número del Caso: CC-2021-97

Fecha: 19 de agosto de 2022

Tribunal de Apelaciones:

Panel III

Abogados de la parte peticionaria:

Lcdo. Ramón E. Dapena Guerrero
Lcda. Maritza Candelaria Bonet

Abogado de la parte recurrida:

Lcdo. Nélson N. Córdova Morales

Materia: Sentencia del Tribunal con Voto particular de conformidad.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Fulano de Tal

     Peticionario

         v.            CC-2021-0097     Certiorari

Demandada A, Demandada B

     Recurridas

SENTENCIA

En San Juan, Puerto Rico, a 19 de agosto de 2022.

Examinados los méritos del recurso de *certiorari* presentado por la parte peticionaria y expedido el 22 de febrero de 2021, se revoca la determinación emitida el 14 de enero de 2021 por el Tribunal de Apelaciones y se modifica la Resolución emitida el 29 de noviembre de 2020 por el Tribunal de Primera Instancia, Sala Superior de Bayamón, en donde se autorizó la regrabación íntegra de la vista confidencial celebrada el 8 de septiembre de 2020.

En consecuencia, se devuelve el caso al Tribunal de Primera Instancia para que, además de las advertencias hechas por el propio foro, se omitan las partes donde se haya identificado el nombre de las personas que estaban en una situación íntima en el material objeto de examen en la referida vista, cualquier otra información o descripción que permita correlacionar con el contenido de las imágenes tanto al peticionario como a la persona que no es parte de este pleito y de toda narración en la que se aluda a las imágenes de los videos de índole íntimo en los que aparecen las personas involucradas.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Kolthoff Caraballo emite un Voto particular de conformidad. La Jueza Asociada señora Pabón Charneco concurre y hace constar la expresión siguiente:

Concurro. Este caso refleja la conducta reiterada de la parte recurrida para exponer la identidad de la parte peticionaria y mantener control sobre información que puede lacerar su dignidad y derecho a la intimidad. Esto, pues la información se relaciona a imágenes íntimas o desnudas de la parte peticionaria mientras estaba en su alcoba, y que fueron copiadas y reproducidas por la parte recurrida sin su conocimiento y autorización. Así, a pesar de ser un caso confidencial en el que se ha ordenado el uso de pseudónimos, la parte recurrida ha utilizado el nombre y apellidos de la parte peticionaria repetidamente, incluso tras la expedición del recurso que hoy atendemos. Por lo tanto, sostengo que los intereses a los que alude la parte recurrida para tener acceso al expediente judicial  - y en particular a la regrabación de la vista - también se protegen con la disponibilidad de la grabación confidencial en custodia de la Secretaria del Tribunal de Primera Instancia para ser escuchada por sus representantes legales, pero sin otorgarle la capacidad de regrabar su contenido.

El Juez Asociado señor Colón Pérez no intervino.


Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Fulano de Tal

    Peticionario

       v.                CC-2021-0097     Certiorari

Demandada A, Demandada B

    Recurridas

Voto particular de conformidad emitido por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 19 de agosto de 2022.

Por entender que la Sentencia que hoy dicta este Tribunal salvaguarda derechos de envergadura como la dignidad, intimidad e integridad personal, estoy conforme. Así, entiendo meritorio hacer hincapié en cuanto a las medidas que los foros de instancia deberían tomar cuando se otorga una orden como la que revisamos. Veamos.

I

El peticionario presentó una demanda de divorcio por la causal de ruptura irreparable. Sin embargo, su entonces esposa o la demandada "A" reconvino para que el divorcio fuera por la causal de adulterio entonces disponible en el Código Civil de Puerto Rico de 1930. Tras diversos trámites, el tribunal de instancia

decretó el divorcio solicitado por la causal de ruptura irreparable.

Posteriormente, el peticionario instó la acción de epígrafe en contra de las demandadas "A" y "B", siendo la demandada "B" la abogada que representó a la primera en la acción de divorcio. La demanda de sentencia declaratoria instada fue a los fines de que se decretara la ilegalidad de la obtención y retención de material íntimo del peticionario con otra persona. Asimismo, incluyó una reclamación por daños y perjuicios por violación al derecho a la intimidad. Cabe destacar que el peticionario presentó la demanda con seudónimos para proteger su intimidad y evitar sufrir algún perjuicio mayor en caso de que fuera revelada su identidad o la de la persona con quien estaba.

En moción separada, el peticionario solicitó la devolución y destrucción definitiva del material íntimo y privilegiado en poder de la parte recurrida. Peticionó también una orden para que todo escrito relacionado a la demanda y los documentos complementarios fueran presentados en un sobre sellado para el examen en cámara por el tribunal. Lo anterior con el propósito de mantener en absoluta confidencialidad la identidad de las partes y el material íntimo y privilegiado objeto del pleito.

Según surge del expediente judicial, el peticionario incluyó con la alegación inicial y la solicitud de medidas cautelares una declaración jurada donde consignó las circunstancias en las que la parte recurrida obtuvo y retuvo

en su posesión material digital e impreso con imágenes íntimas suyas, sin su consentimiento y en clara violación a su intimidad. Explicó que, al percatarse de ciertas irregularidades en las cámaras de seguridad instaladas en su domicilio, se comunicó con la compañía encargada y advino en conocimiento de que la demandada "A" tuvo acceso al material captado por estas. De este modo, pudo constatar con la compañía el día en el que la demandada "A" penetró a su domicilio para cambiar la dirección de las cámaras hacia el interior de su habitación y obtener el material íntimo objeto de este pleito.

Evaluada la demanda y la solicitud de medidas cautelares donde el peticionario expresó su interés en que no fuera revelada la identidad de las partes involucradas en el pleito, el Tribunal de Primera Instancia dispuso lo siguiente:

> Los procedimientos se atenderán en el salón de sesiones y serán grabados como cualquier otro procedimiento. No obstante, el o los señalamientos se tratarán de hacer en días y horas donde los otros asuntos hayan concluido y al momento de atender el caso se ordenará el desalojo de toda persona que no esté relacionada, se cerrarán las puertas del salón en miras que no haya acceso. Se solicitará a la Secretaría el personal de confianza, con una clara instrucción de que todos los asuntos son confidenciales. De la misma forma todos los anejos o documentos con contenido delicado se mantendrán en el expediente electrónico como confidencial. De la misma manera los abogados someterán los anejos y documentos como confidenciales.[1]

Sin embargo, al evaluar el uso de seudónimos para garantizar el anonimato de las partes, el foro primario le

---

[1] *Apéndice del recurso*, pág. 42.

ordenó al peticionario enmendar la demanda e incluir en el epígrafe los nombres completos de los litigantes, bajo pena de desestimación de la acción instada. Inconforme con la orden de enmienda, el peticionario acudió al Tribunal de Apelaciones donde obtuvo una sentencia a su favor. En aquella ocasión, el foro apelativo entendió que sin bien la Regla 8.1 de Procedimiento Civil[2] disponía que toda alegación tuviera el nombre de las partes en el encabezamiento, esta norma procesal no prohibía el uso de seudónimos.

En la *Sentencia*, el tribunal apelativo concluyó que el uso de seudónimos estaba justificado en la naturaleza íntima de las imágenes y grabaciones objeto de la acción. En particular, el Tribunal de Apelaciones expresó lo siguiente:

> En específico, si bien es cierto que entre Fulano de Tal y Demandada A se han ventilado otros casos que revelan su identidad, el asunto que provoca la presentación de esta controversia no contribuye, ni guarda relación con los demás asuntos resueltos en el pasado, o que puedan suscitarse en un futuro. El divorcio de las partes advino final y firme por la causal de ruptura irreparable. Por tanto, *el contenido de las imágenes, tomadas sin el consentimiento del peticionario y en manifiesta violación a su derecho a la intimidad, no pueden ser utilizadas para ningún fin legítimo.*
>
> A su vez, desde que advino en conocimiento de esta violación, el peticionario ha intentado evitar que su intimidad se siga quebrantando con una exposición de su persona mayor a la necesaria. Ello, a pesar de que las recurridas, en particular, la Demandada B, ha consignado claramente en sus comparecencias su nombre completo, con el fin de que se pueda correlacionar su identidad con la del peticionario y la Demandada A.
>
> .     .     .     .     .     .     .
>
> Aquí, el único fin de Fulano de Tal es reivindicar su derecho a la intimidad; derecho que

---

[2] R.P. Civ. 8.1, 32 LPRA Ap. V (2010).

> le fue quebrantado sin justificación alguna. Por otro lado, si bien es cierto que en su momento un tribunal puede tomar medidas para evitar la exposición al público de las imágenes del material íntimo del peticionario, resulta innecesario exponerle a revelar su identidad, cuando ello no contribuye en nada al proceso judicial o al interés público. Por el contrario, el resultado de incluir el nombre completo de las partes litigantes conllevaría seguir lacerando la honra y la reputación de un individuo, a quien se le violentó su derecho constitucional a la intimidad.[3]

Esta determinación fue recurrida ante este Tribunal, sin embargo, denegamos expedir el *certiorari* presentado por la demandada "A". En consecuencia, la *Sentencia* advino final y firme. Cabe mencionar que, en el trámite de este recurso, mediante *Resolución* de 6 de diciembre de 2019, le ordenamos al tribunal primario a que instruyera al personal encargado de SUMAC para que restringiera el acceso y clasificara las fotos y documentos que acompañaban la demanda como material confidencial.[4]

Como resultado de la petición para retomar los procedimientos ante la primera instancia judicial y la celebración de una vista interdictal, la demandada "A" expuso que "si bien ya es final y firme la autorización de proceder mediante el uso de seudónimos como desviación del mandato expreso de la Regla 8.1, todavía no se ha dirimido la procedencia de tramitar este caso de forma confidencial bajo la Regla 62.1".[5] Adujo que la apertura de los

---

[3] *Apéndice del recurso*, págs. 57-58 (énfasis suplido).

[4] *Íd.*, pág. 81.

[5] *Íd.*, pág. 69.

procedimientos judiciales es un derecho fundamental de las partes, los ciudadanos y la prensa. Además, que en este caso el peticionario no había demostrado la necesidad de tramitar el caso bajo estrictas normas de confidencialidad.

Por no contar con el mandato del recurso, y ante la solicitud de una vista de *injunction* preliminar, el Tribunal de Primera Instancia sugirió a los representantes de las partes reunirse para discutir la manera de llegar a un acuerdo. Sobre la oposición de la demandada "A", el tribunal primario especificó que "se sugiere a las partes que a tenor con las expresiones y determinaciones del Tribunal de Apelaciones lo más razonable es que las partes se reúnan y lleguen a un acuerdo en miras de evitar gastos innecesarios y la posibilidad de implementar la Regla 44 de Procedimiento Civil".[6]

En el ínterin, y a petición de la demandada "A", el foro de instancia autorizó la consignación de una memoria "USB" que presuntamente contenía el material obtenido del sistema de seguridad instalado en la residencia del peticionario. El depósito fue efectuado en un sobre sellado. Según expuso la demandada "A", la consignación respondía a la orden emitida por el juez superior que dilucidaba el pleito de la liquidación de la comunidad postganancial con el peticionario.

Por desconocer si efectivamente la memoria "USB" consignada tenía el material íntimo en cuestión, el

---

[6] *Íd.*, pág. 72.

peticionario solicitó que el juez a cargo de la demanda de epígrafe hiciera un examen en cámara. Esto con el apoyo de la declaración jurada de la abogada que lo asistió en el caso de divorcio, la cual relacionaba el contenido íntimo incluido en el apéndice de los recursos apelativos instados en el trámite judicial del divorcio.

Como el Tribunal de Primera Instancia no había resuelto las mociones pendientes, el peticionario presentó una moción con dos declaraciones juradas en apoyo a la solicitud de determinadas medidas cautelares. Sin alguna determinación sobre las solicitudes pendientes, el 1 de septiembre de 2020 hubo una vista sobre el estado de los procedimientos. Según la Minuta, el representante legal del peticionario expresó que la razón de la vista de *injunction* preliminar peticionada era recoger y destruir el material íntimo. Sin embargo, el representante de la demandada "A" cuestionó que el peticionario pretendiera cumplir con el estándar probatorio de los remedios interdictales solo con prueba documental.

Ante el referido planteamiento, el Tribunal de Primera Instancia manifestó que observó el material y "no hay mucho que interpretar".[7] Como los representantes legales de las recurridas alegaron desconocer el contenido de la memoria "USB", el foro de instancia señaló una vista presencial de examen. El propósito era que los abogados observaran el material consignado y determinaran si llegarían a un acuerdo

---

[7] *Íd.*, pág. 108.

sobre el pleito o si continuaría la reclamación de daños, en cuyo caso el material no sería destruido. Al finalizar la vista de estatus, el Tribunal reiteró la orden de confidencialidad y la prohibición de divulgación a terceros.

El 8 de septiembre de 2020 se llevó a cabo la vista de examen. Según surge de la Minuta confidencial, el Tribunal facilitó copia a los abogados de la impresión de los archivos contenidos en la memoria "USB" consignada y manifestó que, de los cuarenta y cuatro archivos, tres o cuatro de ellos podían mostrar desnudos. En referencia a los vídeos e imágenes mostradas, el abogado de la demandada "A" mencionó el nombre de la persona que aparecía en el vídeo y no era parte del pleito. El abogado del peticionario objetó que en la minuta quedara consignado la identidad de las personas que aparecían en el vídeo. En consecuencia, el Tribunal ordenó la eliminación en la minuta del nombre mencionado.

El abogado de la demandada "A" señaló que no se habían tomado las providencias de sellar documentos y solicitó "que la minuta se contenga [*sic*] confidencial, pero que contenga todo".[8] En este contexto, el Tribunal expresó que "los procedimientos están siendo grabados, por lo que, también se mantendrá confidencial la grabación".[9]

Así las cosas, el 25 de septiembre de 2020 la demandada "A" solicitó la regrabación íntegra de la vista y

---

[8] *Íd.*, pág. 112.

[9] *Íd.*

la aclaración sobre la confidencialidad del trámite judicial mediante un pronunciamiento formal fundamentado con determinaciones suficientemente específicas, a tenor con la jurisprudencia aplicable. Ante la solicitud, el Tribunal de Primera Instancia autorizó la regrabación de la vista celebrada, pero refirió el asunto a la juez coordinadora de lo civil para la correspondiente acción. Sin embargo, el peticionario solicitó la reconsideración de tal determinación.

El 2 de octubre de 2020 el Tribunal de Primera Instancia dejó en suspenso la regrabación y ordenó que la demandada "A" justificara el uso que pretendía darle a la regrabación solicitada. Sobre la confidencialidad del trámite judicial, el tribunal pronunció lo siguiente:

> El entendimiento del tribunal de instancia a las determinaciones de los foros de mayor jerarquía es que el expediente y sus documentos son confidenciales en cuanto a terceras personas. […] En cuanto a los documentos judiciales como las minutas y regrabaciones las partes deberán justificar las razones por las cuales desean [accederlas] y el uso que se pretende. En cuanto a que las partes tienen la obligación de […] mantenerlas confidenciales en cuanto a terceros. El tribunal emitió la orden de confidencialidad la cual es continua durante el procedimiento e inclusive una vez terminado al menos que se determine otra cosa, por lo que de una de las partes violar la orden y su obligación de mantener la información de manera confidencial[…] podría encontrarse incurso en desacato.[10]

En su escrito de reconsideración, la demandada "A" argumentó que requerir alguna justificación sobre el uso pretendido de la regrabación vulneraba su derecho a tener

---

[10] *Íd.*, pág. 125.

una representación legal adecuada y constituía un tipo de censura previa proscrita en nuestro ordenamiento. Negó que los foros de mayor jerarquía hubiesen ordenado la tramitación confidencial de este caso. También cuestionó la legitimación del peticionario para reclamar la protección de las imágenes donde solo aparece la tercera persona que no es parte del pleito. El peticionario se opuso oportunamente a la reconsideración.

No obstante, el 30 de noviembre de 2020 el Tribunal autorizó la regrabación de los procedimientos "para uso exclusivo del presente caso la cual debe manejarse según lo ordenado de manera confidencial y sin compartirse con terceras personas so pena de desacato".[11]

Inconforme, el peticionario compareció ante el Tribunal de Apelaciones. El 14 de enero de 2021, mediante resolución dividida, el foro intermedio denegó el recurso de *certiorari* por entender que la determinación era un asunto bajo la sana discreción judicial, a la cual le debía deferencia. Asimismo, dispuso que el foro primario tomó las salvaguardas necesarias para mantener la confidencialidad de la regrabación. En particular, tomó en consideración el hecho de que el Tribunal de Primera Instancia advirtió que la utilización de la regrabación para otro caso o propósito la expondría a la posibilidad de ser hallada incursa en desacato.

---

[11] *Íd.*, pág. 112.

Con tal denegatoria, el peticionario recurrió ante este Tribunal y le imputó a los foros inferiores haber errado al conceder la regrabación, aun cuando ello revelaría el nombre de las partes y revelaría el contenido de naturaleza íntima y confidencial protegido por el derecho constitucional a la intimidad. Expedimos el auto, y con el beneficio de la oportuna comparecencia de ambas partes, entiendo pertinente emitir este Voto particular de conformidad.

II

La Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico protege la dignidad esencial humana y el derecho a la intimidad.[12] Los autores de nuestra Constitución "concibieron que la protección contra ataques a la honra, reputación y vida privada era complemento integral e indispensable del concepto mayor de dignidad humana".[13] Los derechos a la dignidad, integridad personal e intimidad "son derechos constitucionales fundamentales que gozan de la más alta jerarquía y constituyen una crucial dimensión en los derechos humanos".[14] Estas protecciones fundamentales salvaguardan el interés individual de evitar la divulgación de asuntos personales.[15]

---

[12] CONST. PR art. II, secs. 1 y 8.

[13] P.R. Tel. Co. v. Martínez, 114 DPR 328, 330 (1983). *Véase, además*, Indulac v. Central General de Trabajadores, 2021 TSPR 78.

[14] López v. E.L.A., 165 DPR 280, 294 (2005).

[15] *Íd.;* Arroyo v. Rattan Specialties, Inc., 117 DPR 71, 75 (1986) (Hernández Denton, opinión concurrente y disidente).

Por el carácter privilegiado y la preeminencia de este derecho, hemos reconocido que la protección de lo privado opera *ex propio vigore*, no necesita de legislación para exigir su cumplimiento, y puede hacerse valer entre personas privadas.[16] Cualquier violación al derecho constitucional puede ser reivindicada mediante un interdicto o mediante una acción civil de daños y perjuicios por el deber general de respetar la vida privada o familiar de los demás seres humanos.[17]

En el caso normativo, *Colón v. Romero Barceló* reconocimos la protección de la imagen personal como una modalidad del derecho constitucional a la intimidad. Específicamente, allí acogimos la postura doctrinal que "[e]n virtud de este derecho toda persona puede oponerse a que se reproduzca su efigie o se obtengan pruebas fotográficas de la misma, por personas a quienes no haya concedido autorización expresa o tácita".[18] Esto porque "[l]a imagen propia constituye un atributo fundamental con el cual se individualiza socialmente a la persona; es decir, es parte de la identidad personal. Como tal, es digna de tutela

---

[16] *Indulac*, págs. 22-23; López Tristani v. Maldonado, 168 DPR 838, 850 (2006); *P.R. Tel. Co.*, 114 DPR en la pág. 335; E.L.A. v. Hermandad de Empleados, 104 DPR 436, 447 (1975).

[17] Colón v. Romero Barceló, 112 DPR 573, 576-77 (1982)

[18] *Íd.*, pág. 578 (*citando a* Santos Briz, *Derecho de Daños*, Madrid, 1963, págs. 178-179). *Véase*, Bonilla Medina v. P.N.P., 140 DPR 294, 300-01 (1996).

por su estrecha relación con la intimidad de la persona como con su honor".[19]

Por otra parte, en *López Tristani v. Maldonado*, reconocimos que "la grabación de la imagen desnuda de una persona sin su consentimiento, mientras se encuentra en un apartamento privado, se revela como una intromisión irrazonable en su intimidad y su honra. [...] La imagen desnuda de una persona constituye uno de los ámbitos más sagrados de la intimidad corporal".[20]

Previo a esto, en *Fulana de Tal v. Demandado A* este Tribunal tuvo que sopesar si el derecho a la intimidad permitía excluir a la prensa de la vista donde se mostrarían los videos no consentidos de relaciones sexuales de las demandantes con el demandado "A". La conclusión entonces fue a favor de la exclusión de la prensa para preservar el derecho de las demandantes a su dignidad, intimidad e integridad personal en el momento que se mostrara el vídeo de contenido sexual.[21]

Por último, la regla 62.1 de Procedimiento Civil, en lo pertinente, dispone lo siguiente:

> (a) Todas las vistas de los casos en sus méritos serán celebradas en un salón de sesiones del tribunal abierto al público, salvo que la naturaleza del procedimiento, la ley o el tribunal, a iniciativa propia o a instancia de parte, disponga lo contrario. [...].

> (b) La información sobre los expedientes de los casos que por ley o por el tribunal, a

---

[19] *López Tristani*, 168 DPR en la pág. 851 (énfasis suprimido).

[20] *Íd.*, pág. 853.

[21] Fulana de Tal v. Demandado A, 138 DPR 610 (1995).

> iniciativa propia o a solicitud de parte, se
> disponga su confidencialidad, así como las copias
> de éstos, podrán ser mostradas o entregadas sólo a
> personas con legítimo interés, o a otras personas
> mediante orden judicial y por causa justificada.
> […].
>
> (c) Serán personas con legítimo interés las
> siguientes:
>
> (1) Las partes en el pleito y sus herederos o
> herederas.
>
> (2) Los abogados o las abogadas de las partes
> en los pleitos. de Puerto Rico o a instancia del
> Tribunal.[…].[22]

Esta disposición establece que, como norma general, las vistas de los casos civiles en sus méritos, entiéndase los juicios, serán abiertos al público. No obstante, deja a discreción del tribunal que disponga lo contrario, según la naturaleza del procedimiento civil, las disposiciones legales aplicables y los intereses implicados en el pleito.

El escenario más propicio para utilizar la discreción judicial para elaborar medidas cautelares o protectoras en los procedimientos judiciales son aquellos casos civiles donde existe un claro reclamo de violación al derecho a la intimidad, en la vertiente de protección a la imagen desnuda de una persona y la identidad de quien esté en tal situación por ser uno de los ámbitos más sagrados de la intimidad corporal.

III

Como mencionara, en la vista en cuestión se examinó, identificó y describió el material íntimo objeto de la acción judicial por violación al derecho a la intimidad que

---

[22] R.P. Civ. 62.1, 32 LPRA Ap. V (2010).

fue consignado en el tribunal por la parte recurrida. Oportunamente, el peticionario objetó la autorización inicial por entender que subvertiría las medidas de confidencialidad tomadas en el pleito. En consecuencia, hubo una orden para que la recurrida justificara el uso pretendido a la regrabación de la vista confidencial, la cual rehusó cumplir por, entre otras razones, considerar que era un tipo de censura previa y que tiene pleno derecho al acceso a las incidencias del procedimiento. No obstante, el tribunal primario concedió lo solicitado con el apercibimiento de que era para uso exclusivo del caso y que debía ser manejado como material confidencial, sin ser compartido con terceros, bajo pena de desacato.

De ordinario, no intervenimos en las determinaciones interlocutorias que descansan en la discreción del juzgador primario para el eficiente manejo de los casos asignados. No obstante, existen circunstancias en las que como tribunal de última instancia entiendo debemos definir los contornos del ejercicio de la discreción judicial por los jueces primarios ante intereses que merecen especial consideración para llegar al justo balance.

Según se expuso, mientras eran mostradas las imágenes íntimas el día de la vista, el abogado de la demandada "A" mencionó el nombre de la persona que aparecía en el vídeo y no era parte del pleito. El abogado del peticionario objetó que quedara consignado en la minuta la identidad de esta persona. En consecuencia, el Tribunal ordenó la eliminación

en la minuta del nombre mencionado. Ante tal determinación, el abogado de la demandada "A" señaló que no se habían tomado las providencias de sellar documentos y solicitó que la minuta incluyera el nombre completo de todas las personas mostradas en las imágenes. En este contexto fue que la primera instancia enunció que *la grabación también sería confidencial*.

De ahí, la parte recurrida solicitó la regrabación *íntegra* y la fundamentación de la confidencialidad decretada por primera instancia. La recurrida insiste tener derecho a la regrabación *íntegra* y que en este caso no se ha cumplido con los requisitos jurisprudenciales para imponer la confidencialidad o sellar los documentos, es decir, la celebración de una vista de necesidad para denegar la apertura al proceso judicial civil tras la aplicación de un escrutinio judicial estricto.

En la evaluación que hacemos hoy no podemos pasar por alto estas incidencias, pues justifican una salvaguarda mayor que las advertencias consignadas por el tribunal primario al conceder la regrabación *íntegra* solicitada por la recurrida. Si bien es cierto que, de ordinario, los procedimientos, las vistas y los expedientes judiciales son públicos, también lo es que el tribunal tiene la facultad para disponer lo contrario a iniciativa propia o a instancia de parte. Cónsono con tal facultad, en este caso ante el reclamo de violación a la intimidad, fue autorizado el uso de seudónimos para referirse a las partes litigantes, así

como la confidencialidad de todo documento complementario o anejo incluido con la demanda.

La parte recurrida falla al insistir durante todo este trámite judicial, y en el contexto de la solicitud de la regrabación *íntegra* de la vista, en la apertura de los procedimientos judiciales civiles y obviar que las órdenes de confidencialidad, avaladas por los foros apelativos, constituyen la ley del caso. Esto, cobijadas en la facultad del tribunal de tomar aquellas medidas que entienda necesarias para, entre otros aspectos, proteger el derecho a la intimidad de las partes, así como su identidad.[23]

Así, en este caso ya es final y firme la determinación que evaluó los intereses de mayor transcendencia que justificaron imponer la confidencialidad respecto a una acción judicial que se presume pública. Específicamente, porque el foro apelativo validó que la acción fuera tramitada bajo anonimato. Entendió el tribunal apelativo que la violación al derecho a la intimidad era base suficiente para evitar una correlación permanente entre el contenido de las imágenes y la persona del peticionario. Tal criterio es aplicable a la regrabación en cuestión.

Además, al inicio del pleito y previo a tal determinación apelativa sobre los seudónimos, el foro primario había resuelto que excluiría al público de los

---

[23] Recordemos que la doctrina de la ley del caso aplica a las controversias adjudicadas dentro de un caso de forma final y firme para que las partes en litigio puedan proceder "sobre unas directrices confiables y certeras". Cacho Pérez v. Hatton Gotay, 195 DPR 1, 8-9 (2016).

señalamientos y se instruiría al personal judicial de que todos los asuntos serían confidenciales. En consecuencia, los abogados también debían presentar los anejos y documentos como confidenciales. De esta determinación, las partes afectadas no recurrieron a los foros apelativos, por lo tanto, esta constituye la ley del caso, la determinación final sobre la confidencialidad.

En este caso es claro que el Tribunal de Primera Instancia no abusó de su discreción al requerir que la parte recurrida justificara el uso que pretendía darle a la regrabación confidencial como tampoco al advertir del uso exclusivo de la regrabación en el procedimiento judicial ante su consideración. Ahora bien, desde el día de la vista confidencial respecto al contenido de la minuta, el foro primario debió tomar alguna medida específica. Esto, para omitir de la regrabación la información de la identidad de las personas en la situación íntima. Además, el Tribunal de Primera Instancia debió excluir toda narración descriptiva en la que se hizo referencia a las imágenes de los videos de índole sexual o íntimo donde aparecen las personas aludidas. Al no hacerlo, subvirtió las determinaciones previas emitidas por el foro primario e intermedio.

Como lo hemos hecho en el pasado para la protección de intereses esenciales en nuestra sociedad,[24] es prudente reafirmar que cuando el juez primario deba tomar una determinación discrecional debe considerar todos los

_____

[24] *Véase*, Pueblo v. Sanders Cordero, 199 DPR 827 (2018).

elementos imprescindibles del caso que requiera la protección del derecho a la intimidad de las partes, y aun de terceros no incluidos en el pleito. De entender que procede la entrega de la regrabación de una vista confidencial —en este caso dentro de un procedimiento de naturaleza confidencial que no ha permitido revelar la identidad de las partes ni en la presentación de los escritos—, debe establecer de forma clara las condiciones y medidas cautelares necesarias para salvaguardar intereses de gran envergadura como la dignidad humana y el derecho a la intimidad, incluida la identidad de las partes litigantes o de terceros.

En consecuencia, entiendo que el tribunal que emita una orden como la que revisamos en este caso debe establecer claramente parámetros como los siguientes: las personas que podrían tener acceso a la grabación del procedimiento confidencial, el uso que podría dársele, el lugar y medios para custodiarla; los modos para preservar la confidencialidad del contenido como sería solo dar acceso a oír de la grabación, si fuera necesario; y cualquier otra condición, limitación o prohibición ineludible en el caso particular.[25] Como sería en este caso, evitar una exposición mayor y correlación permanente entre el contenido de las imágenes de una persona desnuda y la identidad de quien está en esa penosa situación. Al no hacerlo, y ordenar la entrega de la regrabación *íntegra* de una vista confidencial sin

---

[25] *Íd.*, pág. 848.

ponderar todos estos elementos o establecer los parámetros necesarios para proteger los intereses en juego, concluyo que el foro primario incurrió en abuso de discreción.

Así, estoy conforme con que en este caso pueda permitirse la regrabación solicitada por la parte recurrida en el pleito confidencial con las advertencias hechas por el foro primario y que esta no pueda ser íntegra por subvertir otras medidas protectoras o cautelares previas que constituyen la ley del caso. Por ello, en esta situación particular es correcto que ordenemos la omisión de las partes de la regrabación donde se identificó a las personas que estaban en una situación íntima por sus nombres, cualquier información o descripción que permita identificar tanto al peticionario como a la tercera persona que no es parte de este pleito y las descripciones narrativas de las imágenes de los videos con contenido íntimo.

Considero que esta es la forma óptima de proteger los intereses en juego, pues evita que en un registro en manos de una parte adversa quede de manera permanente la correlación entre el contenido de las imágenes íntimas y la identidad de las personas que han reclamado la protección judicial sobre este asunto. Esto no veda por completo el acceso a las incidencias judiciales para fines legítimos dentro del pleito confidencial, pero pretende impedir el uso o abuso de determinado material para satisfacer rencores

personales, mancillar reputaciones o para provocar escándalos públicos.[26]

Erick V. Kolthoff Caraballo
Juez Asociado

---

[26] Fulana de Tal v. Demandado A, 138 DPR 610, 629 (1995).